**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

_____

**HEATHER HARRISON,**

                                        **Plaintiff,**

         **vs.**                                        **3:11-CV-0840**
                                                        **(MAD/DEP)**

**FORD MOTOR COMPANY,**

                                        **Defendant.**

_____

**APPEARANCES:**                          **OF COUNSEL:**

SCARZAFAVA & BASDEKIS, LLP          John Scarzafava, Esq.
48 Dietz Street
Suite C
Oneonta, New York 13820-5107
_Attorneys for Plaintiff_

WHEELER TRIGG O'DONNELL LLP          Edward C. Stewart, Esq.
370 Seventeenth Street, Suite 4500          Bryan D. Cross, Esq.
Denver, Colorado 80202
_Attorneys for Defendant_

GIBSON, McAKSILL LAW FIRM
69 Delaware Avenue
Suite 900
Chemical Bank Building
Buffalo, New York 14202-3866
_Attorneys for Defendant_

**Mae A. D'Agostino, U.S. District Judge:**

**MEMORANDUM-DECISION AND ORDER**

**INTRODUCTION**

     Plaintiff Heather Harrison ("plaintiff") commenced the within action against defendant

Ford Motor Company ("defendant" or "Ford") seeking compensatory and punitive damages with

claims of strict liability, negligence and breach of warranty for personal injuries sustained as a

result of a motor vehicle accident.  Presently before the Court are two motions.  On January 15,

2013, plaintiff filed a motion pursuant to Rule 56 of the Federal Rules of Civil Procedure seeking partial summary judgment dismissing defendant's affirmative defense of comparative negligence. (Dkt. No. 39). Defendant opposed the motion and filed a motion for summary judgment and dismissal of plaintiff's complaint, in its entirety. (Dkt. No. 40).

## BACKGROUND[1]

### I.    Facts

There are few relevant facts that are undisputed. On November 4, 2010, plaintiff was ejected from the 1987 Ford Bronco II that she was operating on northbound Highway 20 between

---

[1] Local Rule 7.1(a)(3) states:

Summary Judgment Motions

Any motion for summary judgment shall contain a Statement of Material Facts. The Statement of Material Facts shall set forth, in numbered paragraphs, each material fact about which the moving party contends there exists no genuine issue. Each fact listed shall set forth a specific citation to the record where the fact is established. The record for purposes of the Statement of Material Facts includes the pleadings, depositions, answers to interrogatories, admissions and affidavits. It does not, however, include attorney's affidavits. Failure of the moving party to submit an accurate and complete Statement of Material Facts shall result in a denial of the motion.

The opposing party shall file a response to the Statement of Material Facts. The non-movant's response shall mirror the movant's Statement of Material Facts by admitting and/or denying each of the movant's assertions in matching numbered paragraphs. Each denial shall set forth a specific citation to the record where the factual issue arises. The non-movant's response may also set forth any additional material facts that the non-movant contends are in dispute. Any facts set forth in the Statement of Material Facts shall be deemed admitted unless specifically controverted by the opposing party.

Local Rule 7.1(a)(3)(emphasis in original).

Plaintiff failed to comply with the local rules and did not submit a Statement of Material Facts in support of her motion for summary judgment. However, defendant submitted a Statement of Material Facts pursuant to this Court's Local Rules, in support of the motion for summary judgment. Plaintiff properly responded to the Statement. While the Court could deny plaintiff's motion for partial summary judgment due to the failure to comply with this Court's local rules, *see Riley v. Town of Bethlehem*, 5 F.Supp.2d 92, 93 (N.D.N.Y.1998) ("[t]he failure of a moving party to file a properly supported Local Rule 7.1 Statement of Material Facts is fatal to a summary judgment motion), in the interest of judicial economy and to the extent supported by the record, the background set forth in this section is taken from: (1) defendant's Statement of Material Facts and plaintiff's responses thereto; (2) the exhibits and evidence submitted by defendant in support of the motion for summary judgment; and (3) the exhibits and evidence submitted by plaintiff in opposition to defendant's motion for summary judgment. The facts recited are for the relevant time period as referenced in the amended complaint.

Walton and Franklin, New York. The vehicle rolled over a guardrail and down an embankment. Plaintiff sustained injuries resulting in permanent paralysis.

The subject vehicle had at least four prior owners and had been involved in a prior accident. In 2008 or 2009, Matthew Magee sold the vehicle to William Harrison for approximately $100.00. At the time of the crash, plaintiff's Bronco II had been modified and while the parties do not agree on the extent of the modifications, plaintiff concedes that Mr. Harrison made multiple changes to the vehicle himself including replacing the engine, drive shaft, adding a snow plow attachment to the tubular steel aftermarket bumpers, tires and wheels. The seat belt buckle in the 1987 Bronco II was an RCF-67 buckle mounted on a plastic stalk, called a "presenter". Defendant claims that the buckle and presenter are attached to the driver's seat so that the buckle remains in the same accessible position relative to the occupant for ease of use. The original equipment driver's-side restraint system in plaintiff's Bronco II met all applicable Federal Motor Vehicle Safety Standards at the time it was originally sold by defendant.

## II.    Pleadings

On September 17, 2012, plaintiff filed an amended complaint asserting three causes of action: negligence, strict tort liability and breach of warranty.[2] Plaintiff alleges that defendant was "negligent in the design, construction, manufacture, sale, marketing, distribution, inspecting, and testing of the Ford Bronco II, which was unreasonably dangerous and defective because of its defective restraint system" and "that the restraint system within the Ford Bronco II was defective and unreasonably dangerous in its design, construction, manufacture, sale, marketing, distribution, and testing, and/or in failing to recall, retrofit, or modify the restraint system within said Ford Bronco II, which was unreasonably dangerous and defective". Plaintiff also claims that

---

[2] On July 20, 2011, plaintiff filed the original complaint in the within action.

defendant failed to provide adequate warnings and instructions to users of its products. *See* Pltf. Am. Cmplt. at ¶ 6, 8.

On October 1, 2012, defendant filed an answer to plaintiff's amended complaint asserting eighteen affirmative defenses, (Dkt. No. 37), including, *inter alia*:

> 16. The culpable conduct of the Plaintiff, if not the sole cause of damages sustained by the Plaintiff in the accident alleged in the Amended Complaint, contributed to such injuries and damages and any damages otherwise recoverable by Plaintiff in this action shall be diminished in the proportion which the Plaintiff's culpable conduct bears to the culpable conduct whiich caused such damages, pursuant to Article 14A of the New York State Civil Practice Law and Rules.

> 18. That at the time of the occurrence alleged in the Amended Complaint, the Plaintiff had available for her use seatbelts and shoulder harnesses, to restrict her movement within the vehicle in which she was riding, but said Plaintiff was contributorily negligent in that she did not use said devices with the result that the injuries and damages to the Plaintiff and the extent thereof was increased beyond what it would have been if the aforementioned device had been used by Plaintiff.

> 21. Plaintiff is not entitled to recover to the extent any alleged damages or injuries were caused by the misuse, abuse, or failure to properly maintain or care for the product.

> 22. The 1987 Ford Bronco II and its components, that are the subject of this lawsuit, have been changed or modified from its original configuration, and, as a result, the answering Defendant is not liable to the Plaintiff for any injury resulting therefrom.

> 23. Any injury, loss and/or damages that may have been sustained by Plaintiff was the result of an independent, intervening agency or instrumentality over which answering Defendant had no control or right of control.

## III.  Plaintiff's Expert

Stephen R. Syson was retained by plaintiff as an engineering consultant to examine the restraint system performance and crashworthiness of plaintiff's vehicle. Syson concluded that plaintiff was belted at the beginning of the accident. Syson opined that, "there were sufficient

4

forces acting upon Ms. Harrison's accident buckle to cause it to inertially unlatch".  The parties

agree that for the phenomenon of inertial unlatching to occur, a buckle must be impacted at a

sufficient force, for a sufficient duration, in a specific direction, at a time when the occupant is

exerting little or no force on the restraint's webbing.  The parties further agree that the level of

force (expressed in terms of acceleration, or "Gs") at which a buckle may be subject to inertial

unlatching can vary due to manufacturing tolerance, friction due to corrosion and the condition of

the buckles latch spring.[3]  While plaintiff admits that Syson cannot rule out that the corrosion on

the subject buckle's components increased the G-levels at which it might be subject to inertial

unlatching, plaintiff claims that any such variance was not so great to have any practical impact

on the inertial unlatching threshold of the subject buckle.  Syson did not test the subject buckle to

determine the G-level.

### DISCUSSION

**I.     SUMMARY JUDGMENT STANDARD**

Summary judgment is appropriate where there is no genuine issue of material fact and the

moving party is entitled to judgment as a matter of law.  *See* Fed. R. Civ. P. 56 ( c ). Substantive

law determines which facts are material; that is, which facts might affect the outcome of the suit

under the governing law. *See Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 258 (1986). A party

moving for summary judgment bears the initial burden of demonstrating that there is no genuine

issue of material fact and that it is entitled to judgment as a matter of law. Fed.R.Civ.P. 56; *see*

*Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If the Court, viewing the evidence in the light

most favorable to the nonmovant, determines that the movant has satisfied this burden, the burden

then shifts to the nonmovant to adduce evidence establishing the existence of a disputed issue of

---

[3] Plaintiff claims that the force can vary between 130 and 150 Gs and that the force level, in this case, as calculated by Syson, was in excess of 170 Gs.

material fact requiring a trial. *See id.* If the nonmovant fails to carry this burden, summary judgment is appropriate. *See id.*

Summary judgment pursuant to Federal Rule of Civil Procedure 56 is only appropriate where admissible evidence in the form of affidavits, deposition transcripts, or other documentation demonstrates the absence of a genuine issue of material fact, and one party's entitlement to judgment as a matter of law. *See Viola v. Philips Med. Sys. of N. Am.*, 42 F.3d 712, 716 (2d Cir.1994). No genuinely triable factual issue exists when the moving party demonstrates, on the basis of the pleadings and submitted evidence, and after drawing all inferences and resolving all ambiguities in favor of the non-movant, that no rational jury could find in the non-movant's favor. *Chertkova v. Conn. Gen. Life Ins. Co.*, 92 F .3d 81, 86 (2d Cir.1996) (citing Fed.R.Civ.P. 56 ( c ). In applying this standard, the court should not weigh evidence or assess the credibility of witnesses. *Hayes v. New York City Dep't of Corr.*, 84 F.3d 614, 619 (2d Cir. 1996) (citation omitted). These determinations are within the sole province of the jury. *Id*.

## II.   DEFENDANT'S MOTION FOR SUMMARY JUDGMENT[4]

## A.   Negligence and Strict Liability

Plaintiff's negligence and products liability claims are grounded in the Inertial Release/ Unlatching Theory. Specifically, plaintiff contends that due to the force of her impact, her seat belt buckle unlatched/opened causing her to be ejected from the vehicle. Defendant argues that plaintiff's theory lacks support in the scientific and legal community and thus, summary judgment is warranted. In the alternative, defendant argues that even if the buckle released, the restraint system was modified/altered from its original design such that defendant cannot be liable for the

---

[4] The Court's findings on defendant's motion for summary judgment and dismissal of the entire action could render plaintiff's motion for partial summary judgment and dismissal of defendant's affirmative defense moot. As such, the Court will take the motions out of turn and first address defendant's motion.

system. Finally, in the alternative, defendant moves to exclude plaintiff's expert witness from presenting testimony with respect to the inertial release theory arguing that his opinion is unreliable and thus, argues that summary judgment is appropriate.

"In New York, a plaintiff injured by an allegedly defective product may seek recovery against the manufacturer on the basis of any one or more of four theories of liability," including express contract, implied contract, negligence, or strict products liability. *Voss v. Black & Decker Mfg. Co.*, 59 N.Y.2d 102, 106 (1983) (citing *Victorson v. Bock Laundry Mach. Co.*, 37 N.Y.2d 395, 373 N.Y.S.2d 39 (1975)). Established New York law holds "that 'the manufacturer of a defective product is liable to any person injured or damaged if the defect was a substantial factor in bringing about his injury or damages; provided (1) that at the time of the occurrence the product is being used . . . for the purpose and in the manner normally intended, (2) that if the person injured or damaged is himself the user of the product he would not by the exercise of reasonable care have both discovered the defect and perceived its danger, and (3) that by the exercise of reasonable care the person injured or damaged would not otherwise have averted his injury or damages.'" *Voss*, 59 N.Y.2d at 106 (quoting *Codling v. Paglia*, 32 N.Y.2d 330, 342 (1973)). A manufacturer may be liable under strict products liability for defective products based on a "manufacturing flaw, improper design or failure to warn." *Sukljian v. Charles Ross & Son Co., Inc.*, 69 N.Y.2d 89, 94 (1986) (citations omitted). Specifically, under strict products liability, a manufacturer which places a defective product on the market is liable for injury resulting from using the product for its intended or reasonably foreseeable purposes. *See Denny v. Ford Motor Corp*, 87 N.Y.2d 248, 258-59 (1995). In the present matter, plaintiff alleges strict products liability claims of defective design and failure to warn.

To establish a *prima facie* case in strict products liability based on design defect, "'the plaintiff must show that the manufacturer breached its duty to market safe products when it marketed a product designed so that it was not reasonably safe and that the defective design was a substantial factor in causing plaintiff's injury.'" *Adams v. Genie Indus., Inc.*, 14 N.Y.3d 535, 542 (2010) (quotation omitted).[5] Whether a product "is not reasonably safe" has been described as follows: "'whether . . . if the design defect were known at the time of the manufacture, a reasonable person would conclude that the utility of the product did not outweigh the risk inherent in marketing a product designed in that manner.'" *Id.* (quotation omitted). Therefore, to succeed on this claim, plaintiffs must establish that (1) the product as designed posed a substantial likelihood of harm; (2) it was feasible to design the product in a safer manner; and (3) the defective design was a substantial factor in causing her injury. *See Voss*, 59 N.Y.2d at 108 (citation omitted).

Although plaintiffs assert the design defect claim under theories of strict products liability and negligence, the same *prima facie* case is required under both theories. *See Jarvis v. Ford Motor Co.*, 283 F.3d 33, 62-63 (2d Cir. 2002) (citing *Denny*, 87 N.Y.2d at 248) ("In general, . . . the strict liability concept of 'defective design' is functionally synonymous with the earlier negligence concept of unreasonable designing" (internal citation omitted)). In particular, the decisive question for both strict liability and negligent design causes of action is whether the evidence establishes that the product "was 'not reasonably safe' as *Voss* defines the term." *Adams*, 14 N.Y.3d at 543. Moreover, it is well-settled law that "'[w]here liability is predicated on a

---

[5] "In design defect cases, the alleged product flaw arises from an intentional decision by the manufacturer to configure the product in a particular way. In contrast, in strict products liability cases involving manufacturing defects, the harm arises from the product's failure to perform in the intended manner due to some flaw in the fabrication process. In the latter class of cases, the flaw alone is a sufficient basis to hold the manufacturer liable without regard to fault." *Denny*, 87 N.Y.2d at 257 n.3 (citation omitted).

failure to warn, New York views negligence and strict liability claims as equivalent.'" *Estrada v. Berkel Inc.*, 14 A.D.3d 529, 530 (2d Dep't 2005) (quotation omitted).

### 1. Inertial Release Theory

Defendant argues that plaintiff's theory of inertial release is a "phenomenon demonstrated in laboratory settings and in courtroom 'parlor tricks' that does not occur in 'real world' settings". Defendant cites to three cases in support of the argument that the court should reject the theory in its entirety and award defendant summary judgment dismissing the strict liability and negligence claims. *Dale v. Gen. Motors Corp.*, 109 F.Supp.2d 1376 (N.D. Ga. 1999), *Rogers v. Ford Motor Co.,* 952 F.Supp. 606 (N.D.Ind.1997) and *Hoffman v. Ford Motor Co.*, 493 F. App'x 962 (10th Cir. 2012). The Court has reviewed the aforementioned cases and concludes that the holdings do not support defendant's argument. In each case, the Court was confronted with a motion to exclude expert testimony and for judgment as a matter of law on the basis of that exclusion, not a motion for summary judgment on the basis that the entire theory of recovery is precluded. In dicta, the *Dale* Court noted that "the concept of inertial release as a real world proposition has been rejected by the scientific community at large", however, summary judgment was not awarded on that basis. *Dale*, 109 F.Supp.2d at 1381. Rather, that was a "consideration weighing against admission of [the expert's] testimony". *Id.* In *Hoffman*, the Court was faced with an appeal of the district court's decision to allow expert testimony at trial regarding the inertial unlatch theory. The Tenth Circuit held that the trial court erred in allowing the expert's testimony and therefore, granted the defendant's Rule 50 motion because "the only evidence supporting Hoffman's inertial unlatch theory, and therefore, that Erica's buckle was defective, was Good's testimony". *Hoffman*, 493 F.App'x at 979. The *Dale*, *Hoffman* and *Rogers* decisions do not provide any precedent for defendant's claim that the theory of inertial unlatch should be rejected

in its entirety.  To the extent that the aforementioned cases involve the reliability of expert testimony, the cases will be discussed *infra* in the context of defendant's alternative argument for summary judgment on the basis of exclusion of plaintiff's expert opinion.

In opposition to defendant's motion, plaintiff cites to a case from the Western District of New York, *Guild v. Gen. Motors Corp.*, 53 F.Supp.2d 363 (W.D.N.Y. 1999).  In *Guild*, the plaintiff claimed that her seat belt became unlatched during a collision with another vehicle.  The plaintiff alleged that she was properly restrained prior to the crash and that the seat belt system in her automobile was defective and dangerous because inertial forces generated during a collision caused the seat belt buckle to release and unlatch.  *Id.* at 365.  The defendant disputed the plaintiff's facts contending that there was no defect in the system and that the plaintiff was not wearing her belt at the time of the collision.  The defendant also claimed that inertial release did not occur in the "real world".  Resolving motions *in limine* prior to trial, the Court noted that:

> the theory of "inertial release" is not a novel theory which was developed by plaintiff's experts.  Rather, it is based on a scientific phenomenon which has its groundings in principles of science and of physics and has formed the basis for a number of studies and tests, including extensive testing by NHTSA and testing by GM itself.

*Id.* at 369.

The theory of inertial release has been accepted as a theory in rollover accidents.  In *Reynolds v. Gen. Motors Corp.*, 2007 WL 2908564, at *6 (N.D.Ga. 2007), the court concluded:

> the theory of inertial release enjoyed very little acceptance within the scientific community eight years ago, it is now the subject of substantial debate within the scientific literature, with many scientists proffering evidence of instances of inertial release, especially in the context of a rollover incident.

Consequently, on the issue of whether plaintiff may present this theory as a basis for her negligence and strict liability causes of action, based upon the facts set forth herein, this Court,

with the support of other federal courts, finds in favor of plaintiff.  *See* Transcript of Telephone Conference, *Somerville v. Gen. Motors Corp.* No. 97-CV-7366 (E.D.N.Y. September 27, 2000)*; Grimes v. Mazda N. Am. Operations*, 355 F.3d 566 (6th Cir. 2004) (during trial, the plaintiff presented expert testimony on inertial unlatching with respect to a rollover accident); *Raley v. Hyundai Motor Corp.*, 2010 WL 528420 (W.D.Okla. 2010) (the plaintiff's expert would be permitted  to testify regarding his opinions that the seat belt buckle in the plaintiff's vehicle was defective because it inertially unlatched during the accident); *Christie v. Mazda Motor of Am., Inc.*, 2006 WL 2128897 (E.D.Tenn. 2006).  The reliability of Syson's opinion will be discussed *infra*, however, with respect to the issue presently being considered, whether inertial release occurs in real world accidents and whether it is an acceptable legal theory, the *Guild* and *Somerville* decisions, both from this district, clearly resolve that issue in favor of plaintiff.[6] Accordingly, defendant's motion for summary judgment and dismissal of plaintiff's negligence and strict liability causes of action, based upon this argument, is DENIED.

### 2.    Plaintiff's Expert Opinion

In the alternative, defendant argues that plaintiff's negligence and strict liability claims must be dismissed because Syson's opinion regarding inertial unlatching is unreliable and fails to comport with the standards set forth in Fed. R. Evid. 702 and *Daubert v. Merrill–Dow, Pharm. Inc.*, 509 U.S. 579 (1993).

**The admissibility of expert testimony is governed by Rule 702 of the Federal Rules of** Evidence.  That Rule provides as follows:

---

[6] Defendant is not precluded from raising this argument during the trial of this action. *See Bradley v. Gen. Motors Corp.*, 1997 WL 354721, at *2 (10th Cir. 1997) (GM's experts testified that while inertial unlatch is possible, it only occurs when the absolute right forces coincide and argued that the plaintiffs' effort to demonstrate the phenomenon was a "parlor trick").

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

Fed. R. Evid. 702.

In reviewing the admissibility of expert testimony, "the district court has a 'gatekeeping' function under Rule 702 – it is charged with 'the task of ensuring that an expert's testimony both rests on a reliable foundation and is relevant to the task at hand.'" *Amorgianos v. Nat'l R.R. Passenger Corp.*, 303 F.3d 256, 265 (2d Cir. 2002) (quoting *Daubert*, 509 U.S. at 597). The rule set forth in *Daubert* applies to scientific knowledge, as well as technical or other specialized knowledge. *See Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 141 (1999).

As the Second Circuit has explained,

> [i]n fulfilling this gatekeeping role, the trial court should look to the standards of Rule 401 in analyzing whether proffered expert testimony is relevant, *i.e.*, whether it has any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence. Next, the district court must determine whether the proffered testimony has a sufficiently reliable foundation to permit it to be considered. In this inquiry, the district court should consider the indicia of reliability identified in Rule 702, namely, (1) that the testimony is grounded on sufficient facts or data; (2) that the testimony is the product of reliable principles and methods; and (3) that the witness has applied the principles and methods reliably to the facts of the case. In short, the district court must make certain that an expert, whether basing testimony upon professional studies or personal experience, employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field.

*Amorgianos*, 303 F.3d at 265 (internal alterations, quotations, and citations omitted). The court must also consider the fact that "experience in conjunction with other knowledge, skill, training or

education . . . [may] provide a sufficient foundation for expert testimony," and "[i]n certain fields, experience is the predominant, if not sole, basis for a great deal of reliable expert testimony." Advisory Committee Notes, 2000 Amendments, Fed. R. Evid. 702; *see also Kumho Tire*, 526 U.S. at 156 ("[N]o one denies that an expert might draw a conclusion from a set of observations based on extensive and specialized experience").

"In undertaking this flexible inquiry, the district court must focus on the principles and methodology employed by the expert, without regard to the conclusions the expert has reached or the district court's belief as to the correctness of those conclusions." *Amorgianos*, 303 F.3d at 266 (citation omitted). "In deciding whether a step in an expert's analysis is unreliable, the district court should undertake a rigorous examination of the facts on which the expert relies, the method by which the expert draws an opinion from those facts, and how the expert applies the facts and methods to the case at hand." *Id.* "A minor flaw in an expert's reasoning or a slight modification of an otherwise reliable method will not render an expert's opinion *per se* inadmissible." *Id.* "'The judge should only exclude the evidence if the flaw is large enough that the expert lacks good grounds for his or her conclusions.'" *Id.* (quotation and other citation omitted).

As the courts and Advisory Committee have made clear, "the rejection of expert testimony is the exception rather than the rule." Fed. R. Evid. 702, Advisory Committee's Note; *see also E.E.O.C. v. Morgan Stanley & Co.*, 324 F. Supp. 2d 451, 456 (S.D.N.Y. 2004); *U.S. Info. Sys., Inc. v. Int'l Bhd. of Elec. Workers Local Union No. 3*, 313 F. Supp. 2d 213, 226 (S.D.N.Y. 2004). "This principle is based on the recognition that 'our adversary system provides the necessary tools for challenging reliable, albeit debatable, expert testimony.'" *Melini v. 71st Lexington Corp.*, 2009 WL 413608, at *5 (S.D.N.Y. 2009) (quoting *Amorgianos*, 303 F.3d at 267).

However, "when an expert opinion is based on data, methodology, or studies that are simply inadequate to support the conclusions reached, *Daubert* and Rule 702 mandate the exclusion of that unreliable opinion testimony." *Amorgianos*, 303 F.3d at 266; accord *Ruggiero v. Warner-Lambert Co.*, 424 F.3d 249, 253 (2d Cir. 2005).[7] Furthermore, "it is critical that an expert's analysis be reliable at every step." *Amorgianos*, 303 F.3d at 267. Of course, "the district court must focus on the principles and methodology employed by the expert, without regard to the conclusions the expert has reached or the district court's belief as to the correctness of those conclusions." *Id.* at 266 (citing *Daubert*, 509 U.S. at 595). Nevertheless, "conclusions and methodology are not entirely distinct from one another." *Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 146 (1997). Accordingly, "[a] court may conclude that there is simply too great an analytical gap between the data and the opinion proffered." *Joiner*, 522 U.S. at 146.

The Court is wary of awarding summary judgment where there are conflicting expert reports. *In re Omnicom Group, Inc. Sec. Litig.*, 597 F.3d 501, 512 (2d Cir. 2010); *Rand v. Volvo Fin. N. Am.*, 2007 WL 1351751, at *3 (E.D.N.Y. 2007) ("[i]t is not for the court to decide which expert opinion is more persuasive."). It would be improper for the Court to engage in a "line by line" examination and comparisons of the conflicting expert opinions. The jury must make a determination regarding the credibility of all expert witnesses. *See Scanner Techs. Corp. v. Icos*

---

[7] *See also Zaremba v. Gen. Motors Corp.*, 360 F.3d 355, 358-60 (2d Cir. 2004) (holding that expert testimony that was speculative and unreliable was properly not considered by the district court on summary judgment); *Dreyer v. Ryder Auto. Carrier Grp., Inc.*, 367 F. Supp. 2d 413, 416-17 (W.D.N.Y. 2005) (noting that "[a]n otherwise well-credentialed expert's opinion may be subject to disqualification if he fails to employ investigative techniques or cannot explain the technical basis for his opinion"); *Dora Homes, Inc. v. Epperson*, 344 F. Supp. 2d 875, 887-89 (E.D.N.Y. 2004) (declining to consider plaintiff's expert's testimony in deciding pending motions for summary judgment based on a finding that the expert's testimony "is unreliable under Fed. R. Evid. 702 and the principles articulated in *Daubert* and its progeny," given that the expert (1) qualified his opinions, (2) failed to support his opinions with any methodology which the court could analyze, and (3) rested his opinions "upon nothing more than subjective belief and unsupported speculation").

*Vision Sys. Corp.*, 253 F.Supp.2d 624, 634 (S.D.N.Y. 2003) ("The credibility of competing expert witnesses is a matter for the jury, and not a matter to be decided on summary judgment.").

In this matter, defendant does not dispute that Syson is qualified to testify. Rather, defendant contends that Syson's opinion is unreliable. The law is well-settled that only serious flaws in an expert's reasoning or methodology will warrant exclusion. *Id.* (citing *Amorgianos*, 303 F.3d at 267). "Although expert testimony should be excluded if it is speculative or conjectural, or if it is based on assumptions that are so unrealistic and contradictory as to suggest bad faith, or to be in essence an apples and oranges comparison, other contentions that the assumptions are unfounded go to the weight, not the admissibility, of the testimony." *Cohalan v. Genie Indus., Inc.,* 2013 WL 829150, *5 (S.D.N.Y. 2013) (quoting *Boucher v. U.S. Suzuki Motor Corp*., 73 F.3d 18, 21 (2d Cir.1996)).

According to Syson's affidavit and report, he conducted a physical inspection of the vehicle, the seatbelts and other physical evidence. Syson also reviewed photographs of the vehicle and deposition testimony of witnesses. Syson Aff. at ¶ 11, 12. Syson performed a failure analysis, described as a "differential diagnosis" to determine what caused the separation of the tongue from the buckle. He avers that the method is the same as used by other engineers and that it was taught to him while he was at the General Motors Institute. Syson examined all possible causes and eliminated those that were not probable. Syson opined:

> For inertial unlatching to occur, three factors have to be present: a) the back of the seat belt buckle must be contacted with a force of at least 130-150 G's; b) the duration of the force must be at least four to eight milliseconds; and c) there must be slack in the belt at the time the force is applied. Based on conversations with Mr. John Markosky, the accident reconstructionist hired by the plaintiff in this case, and Dr. Martha Bidez, the biomechanical engineer hired by the plaintiff in this case, it is my opinion that the proper conditions were present during the roll over accident involving Ms. Harrison to cause her RCF-67 buckle to inertially release.

*Id*. at ¶ 39.

Syson relied upon Markosky's conclusions and "Exponent and NHTSA" testing of "side buckle releases both similar and identical to the subject Ford/Allied buckle" and opined that plaintiff's "right hip struck the buckle, and based on the FAA and NHTSA tests, imparted an acceleration of at least 170 G to the buckle. The duration of the strike was at least 4 -8 milliseconds, the time required for this belt to open. *Id*. at ¶ 24, 40.

Defendant contends that Syson's opinion is unreliable because he did not determine the magnitude or duration of any forces by any scientific means. Defendant argues that Syson ignored alternate theories and relied upon tests performed on different, new, unworn buckles. Defendant relies upon the Tenth Circuit holding in *Hoffman*.

Defendant's arguments in support of excluding Syson's testimony are not novel. Indeed, nearly identical arguments were made in *Somerville*. In *Somerville*, the Court was presented with motions *in limine* regarding the admissibility of evidence at trial. Of relevance herein, the defendants moved to exclude Stephen R. Syson from testifying at trial arguing that his opinions were unreliable. *See* Transcript of Telephone Conf., *Somerville* at p. 3. Specifically, the defendant alleged, *inter alia*, that Syson's methodology was erroneous and further, that his theory of inertial unlatch was not generally accepted. *Id.* The Court addressed Syson's methodology:

> Mr. Syson asserts that his "differential analysis" was a method that he learned at GM and he conducted his analysis relying upon scientific principles that he also learned at GM when he was employed there as a research engineer.
>
> The expert will be required, however, to set out the scientific principles that were used and will not be permitted to employ the slap or parlor trick test in this case, since that concept does not apply to real world situations.

*Id.* at p. 10.

The Court also discussed the reliability of Syson's opinion, "[i]n this case, Mr. Syson has done an analysis relying upon scientific principles. Mr. Syson disputes that he has never been published or subjected to peer review." *Id*. at p. 12. In addition, Judge Seybert distinguished the facts in *Somerville* from the *Dale* case noting that, "[i]n this case, Mr. Syson has noted numerous bases to conclude that plaintiff was wearing a seat belt prior to it inertially unlatching". *Id*. The Court also noted that Syson cited to patents recognizing the problem of inertial unlatching. The Court held:

> While there are many close questions as to the bases of some of the evidence that Mr. Syson relied upon, the Court finds that under the broad standard for admissibility in this Circuit, Mr. Syson's testimony narrowly meets the requirements of Daubert and is not so speculative or conjectural to be unrealistic and contradictory and, therefore, his testimony shall be admitted.

*Id*. at p. 13.

The Court cited the *Guild* decision and noted that the "disagreement between the studies or tests relied upon by plaintiff [ ] would go to the weight, not the admissibility, of Syson's testimony".

Defendant argues that Syson's opinion is subject to exclusion due to his reliance upon testing to new, unworn RCF-67 buckles. In *McCuller v. Daimler/Chrysler Corp.,* 2006 WL 5159183, at *1 (E.D.Tex. 2006), the Court addressed similar arguments relating to Syson. In *McCuller*, the defendants attacked Syson's opinions on inertial unlatch because he has not seen or done any testing on the RNS3g buckle that was used in the subject vehicle. The defendants argued that "Syson could not know if the crash forces imparted to the buckle (through the subject vehicle in the crash) are or could be sufficient to cause the buckle to inertially unlatch." *Id*. The Court rejected the defendants arguments holding:

> *Daubert* does not necessarily require an expert to test the subject product to determine whether it is defective. Syson concluded the buckle was prone to unlatching because of his background and experience, coupled with his knowledge of the testing performed on other buckles with similar internal designs. He also examined a second TRW product, the RNS4g, and concluded that, unlike the buckle involved in this case, the second buckle had a mechanism to prevent inertial unlatching. Whether an engineer should properly rely on his knowledge of testing performed on other products to reach conclusions about the safety or propensities of a particular product is a matter for cross-examination. Syson's opinions are sufficiently reliable to be admissible under *Daubert*.

*Id*. (internal citations omitted).

With respect to plaintiffs' argument that Syson improperly rejected an equally plausible explanation for plaintiff's ejection, i.e. "false latch"; this argument impacts the weight of Syson's testimony not the admissibility. "Although expert testimony should be excluded if it is speculative or conjectural, or if it is based on assumptions that are so unrealistic and contradictory as to suggest bad faith, or to be in essence an apples and oranges comparison, other contentions that the assumptions are unfounded go to the weight, not the admissibility, of the testimony." *Cohalan v. Genie Indus., Inc.*, 2013 WL 829150, *5 (S.D.N.Y. 2013) (quoting *Boucher v. U.S. Suzuki Motor Corp.*, 73 F.3d 18, 21 (2d Cir.1996)).

Finally, defendant relies upon the "Moffatt paper" and the conclusion that the accelerations required to inertially unlatch a buckle increase with webbing tension and that in rollover testing, unlatching threshold accelerations and zero belt load do not co-exist. Defendant annexed the Moffatt paper noting that the NHTSA and *Dale* court relied upon it's conclusions and argues that Syson ignored the findings.

In Paragraph 30 of his affidavit, Syson specifically addressed the Moffatt paper and discussed and rejected the conclusions therein. Defendant's motion to exclude Syson's testimony contains many factual averments which are seemingly based upon defendant's own expert's

opinions.[8]  The fact that Syson's opinion (or any expert opinion) is contradicted by other experts

is not a basis to exclude his opinion.  Rather, that is an issue for the jury to consider.  The jury

will receive clear instructions about how to weigh expert testimony.  *See Okraynets v. Met.*

*Transp. Auth.*, 555 F.Supp.2d 420, 434 (S.D.N.Y. 2008).

In this case, Syson avers, without wavering, that plaintiff was restrained at the time of the

accident.  Accordingly, this case is distinguishable from *Dale* for the same reasons set forth in the

*Somerville* decision.  Syson's report and affidavit rest on a sufficiently reliable foundation and are

relevant to the issues presented. *See Amorgianos*, 303 F.3d at 265 (citation omitted); *see also*

*Borawick v. Shay*, 68 F.3d 597, 610 (2d Cir.1995) (holding that the Supreme Court in *Daubert*

"expressed its faith in the power of the adversary system to test 'shaky but admissible' evidence,

... and advanced a bias in favor of admitting evidence short of that solidly and indisputably

proven to be reliable" (quotation omitted)).  While Syson's opinion may not be grounded in "a

plethora of hard facts, data, studies, and scientific literature", that is not a basis to exclude.

*Figueroa v. Boston Scientific Corp.*, 254 F.Supp.2d 361, 368 -369 (S.D.N.Y. 2003).  There is no

evidence that Syson's opinions "approach the outer boundaries of traditional scientific and

technological knowledge" or are based on novel scientific evidence.  *See id; Lappe v. Am. Honda*

*Motor Co., Inc.*, 857 F.Supp. 222, 228 (N.D.N.Y. 1994) (the expert's opinions are grounded in the

results of his investigation, observations, experience, calculations, examination of accident

reports, legal documents, medical records, medical images, owner's manuals, comparable Honda

Civics, an inspection of the accident site, accident vehicle, transcripts of witness depositions,

---

[8] The record on defendant's motion is voluminous and contains more than 26 exhibits including deposition
testimony, expert reports, photographs, and other documentation (some of which is not properly authenticated).
However, in support of the motion to exclude Syson's testimony, defendant cited, in one footnote, to the deposition
transcript of Bob Piziali (Exhibit X).  Defendant does not identify, address or comment on Mr. Piziali, why he was
retained and what he opined, in any manner in the substance of the argument.

reports from defendants' liability experts, numerous photos of the accident scene, and police and medical reports). The fact that Syson or any expert offered herein, may have neglected to perform some "essential" tests will go to the weight of his testimony, not its admissibility. *See Lappe*, 857 F.Supp. at 228.

Defendant's contentions go to the weight of Syson's testimony and do not provide a basis for exclusion. *See Demar v. D.L. Peterson Trust*, 2006 WL 2987314, *5 (N.D.N.Y. 2006) (permitting the testimony of the expert regarding the effect of seatbelt use to challenge and discredit the defendant's expert and the methodologies he used in reaching his conclusions). Defendant has raised flaws in Syson's opinions, but "given that there is sufficient indicia of reliability" to allow admission of his testimony, "vigorous cross examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." *Atl. Specialty Ins. Co. v. Gold Coast Dev., Inc.*, 2008 WL 974411, at *9 (E.D.N.Y. 2008) (citing *Daubert*, 509 U.S. at 596 (citations and quotations omitted)). The Court has considered Syson's investigation, his background and experience and reviewed his report and affidavit and finds that his opinion will assist the jury. Accordingly, the Court denies defendant's motion to exclude Syson's testimony based upon this argument.

### 3. Modification/Alteration for Original Design

In the alternative, defendant argues that the restraint system was modified/altered from its original design. "While the manufacturer is under a nondelegable duty to design and produce a product that is not defective, that responsibility is gauged as of the time the product leaves the manufacturer's hands." *Wick v. Wabash Holding Corp.,* 801 F.Supp.2d 93, 103 (W.D.N.Y. 2011) (citation omitted). "Substantial modifications of a product from its original condition by a third

party which render a safe product defective are not the responsibility of the manufacturer." *Id.* citing *Robinson v. Reed-Prentice Division of Package Mach. Co.*, 49 N.Y.2d 471 (1980) (holding that the defendant was not strictly liable for defective design where evidence established that when the defendant sold the molding machine, the machine was not defective, and had the machine been left intact, the machine's safety gate and connecting interlocks would have rendered the predicate accident an impossibility).

In defendant's Reply Memorandum of Law, defendant contends that this portion of the motion is based on "numerous undisputed alterations of the restraint system, including a rusted and potentially non-original buckle with a broken retractor". However, defendant has not provided the Court with any competent, admissible evidence of such modifications or alterations including but not limited to citations to deposition testimony, properly authenticated documentation of such alterations/modifications or any affidavits regarding such alterations or modifications. Indeed, on May 8, 2012, William Harrison ("W. Harrison") was deposed and testified that he gave the subject vehicle to his daughter, Heather Harrison. W. Harrison testified that he made modifications to the motor, wheels and windshield wiper motor. However, W. Harrison testified that he did not modify the seatbelt system:

> Q.  Did you ever do any kind of repairs or maintenance or alterations to any of the seat belt systems within that vehicle?
>
> A.  Never.

*See* W. Harrison Dep. at p. 7.

In addition to the lack of factual support, defendant does not cite to any caselaw involving similar factual circumstances where a court granted summary judgment on this issue. Defendant has failed to meet the burden on its motion for summary judgment on this issue. While defendant may posit this theory at trial, the lack of admissible evidence precludes the Court from ruling, as a

matter of law on this issue.  *See Sours v. Gen. Motors Corp.*, 717 F.2d 1511, 1518 (6th Cir. 1983) (conflicting evidence regarding the condition of the nine year old vehicle was properly left to the jury to resolve).  Accordingly, defendant's motion for summary judgment and dismissal of the negligence and strict liability causes of action based upon the argument that the driver restraint system was not in the same condition as sold by Ford, is DENIED.

**B.      Breach of Warranty**

Defendant argues that plaintiff's breach of warranty claim is time-barred.  In plaintiff's Reply Memorandum of Law submitted in opposition to defendant's motion, plaintiff "concedes that the breach of warranty claim is time barred".  Thus, defendant's motion for summary judgment and dismissal of this cause of action is granted.

**C.      Punitive Damages**

Defendant moves for dismissal of plaintiff's $300,000,000.00 punitive damages demand arguing that defendant's conduct was not wanton, willful or malicious, as a matter of law. "Under New York law, punitive damages are available where a 'defendant's conduct has constituted gross, wanton, or willful fraud or other morally culpable conduct to an extreme degree.' "  *Car-Freshner Corp. v. Big Lots Stores, Inc*., 314 F.Supp.2d 145, 153 (N.D.N.Y. 2004) (quoting *Getty Petroleum Corp. v. Island Transp. Corp*., 878 F.2d 650, 657 (2d Cir.1989)). "New York law clearly permits punitive damages where a wrong is aggravated by recklessness or willfulness, ... whether or not directed against the public generally." *Id.*

Presented with similar facts, courts in other districts have denied motions for summary judgment and dismissal of punitive damages claims holding that the question of whether a defendant's conduct rose to the level of conscious indifference should be left for a jury to determine and not decided summarily.  *See Reynolds*, 2007 WL 2908564 at *11 -12  (in a case

22

involving inertial unlatching, the court held that, "[p]laintiffs have put forth evidence of GM's knowledge of certain dangers inherent in the operation of the Blazer" and have "show[n] that GM knew of a possible defect in the Blazer's roof design by pointing to the testimony [ . . .] regarding GM's choice to use carbon-based steel with little or no bracing to support the Blazer's roof"); *see also Greco v. Ford Motor Co.,* 937 F.Supp. 810, 817 (S.D.Ind.1996) (the plaintiffs sought punitive damages alleging "gross negligence and/or wanton misconduct in developing and selling the Bronco II" while "Ford will provide evidence similar in volume and quality that directly contradicts Plaintiffs' evidence." The case cited by defendant, *Satcher v. Honda Motor Co.*, 52 F.3d 1311 (5th Cir. 1995), is not instructive nor applicable to this case, at this stage of the litigation. In *Satcher*, the Court reversed an award of punitive damages after trial.

Based upon the factual disputes discussed *supra*, defendant's motion for summary judgment and dismissal of plaintiff's claim for punitive damages is not warranted at this time. However, the parties are advised that once plaintiff produces her evidence at trial, defendant is not precluded from requesting that the Court revisit this issue and the viability of the punitive damage claims on a Rule 50(a) and/or 50(b) motion. *See Greco*, 937 F.Supp. at 817.

## III. PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT[9]

Plaintiff moves for partial summary judgment and dismissal of "any comparative negligence alleged which does not relate directly to the use and/or operation of the seat belt".[10] Without identifying the affirmative defenses by number or paragraph, plaintiff explains, "plaintiff limits this motion to any comparative negligence alleged with regard to Heather Harrison's

---

[9] Plaintiff did not comply with this Court's Local Rules and did not submit a Statement of Material Facts on this motion. The "facts" discussed in the motion contain citations to the amended complaint and expert reports and thus, are not properly authenticated or deemed "facts" for the purposes of this motion.

[10] Defendant asserted eighteen affirmative defenses. Plaintiff does not identify, by number or with any specificity, which affirmative defenses are subject to summary judgment in this motion.

operation of the subject vehicle and any alleged comparative negligence with regard to the condition of the vehicle." Defendant argues that plaintiff "seeks to keep evidence about how and why the crash happened away from the jury" and that the alleged seat belt buckle defect "could never have manifest itself and caused the enhanced injury in the absence of the initial loss of vehicle control and subsequent rollover".

"Crashworthiness involves a claim that a defect in the automobile caused the plaintiff's injuries, rather than the underlying accident causing them." *Hodges v. Mack Trucks Inc*., 474 F.3d 188, 202 (5th Cir. 2006). "In an 'enhanced injury' product defects case, the plaintiff seeks to recover for the product defects that caused or enhanced injuries in the course of or following the collision even though the alleged defects did not cause or contribute to the collision itself." *Morris v. Mitsubishi Motors N. Am., Inc*., 782 F.Supp.2d 1149, 1160 (E.D.Wash. 2011). Under New York law, a motor vehicle manufacturer's potential liability for design defects extends to cases in which plaintiff alleges that although the defect did not cause the accident, it enhanced or aggravated plaintiff's injuries. *Pesce v. Gen. Motors Corp*., 939 F.Supp. 160 (N.D.N.Y. 1996). Such "second collision" cases involve incidents where the driver is involved in a collision, during which time, as result of initial collision, occupants of vehicle move about and hit interior portions of cabin or are ejected from vehicle and injured. *Id*.

In support of the motion, plaintiff relies upon a decision from this district, *Pesce v. Gen. Motors Corp*., 939 F.Supp. 160 (N.D.N.Y. 1996).[11] In *Pesce*, the issue of how the plaintiff sustained her injuries was partially related to "the manner in which the vehicles interacted during the crash sequence, which [was] [ ] contested by the parties and the experts they [ ] retained." *Id.*

---

[11] This citation relates to the defendant's motion for summary judgment that was filed subsequent to the ruling regarding the affirmative defenses. It is cited herein solely for the purposes of identifying the relevant facts in the *Pesce* case.

at 161.  It was undisputed that the plaintiff was wearing her seat belt at the time of the incident.

*Id.*  The plaintiff alleged that the seat belt failed to protect his wife and the evidence demonstrated

that shortly after the accident, the plaintiff received a recall notice from GM pertaining to the seat

belt in the Chevrolet.  Notably, "GM had discovered a manufacturing defect in vehicles like the

1990 Chevrolet Beretta, which potentially would render the front seat belts inoperative."  *Id.*

In support of the motion, plaintiff relies upon an oral decision issued by United States

District Court Judge David R. Hurd on the plaintiff's motion to strike the defendant's affirmative

defense of contributory negligence.  *See* Transcript of Proceedings, *Pesce v. Gen. Motors Corp.*

(94-CV-211) (N.D.N.Y. Nov. 12, 1996).  The defense conceded that the plaintiff was using her

seatbelt at the time of the accident and further stated that it did not intend to introduce evidence

that the plaintiff was guilty of negligence in the operation and use of the seatbelt.  *Id*. at 3.  The

Court issued an order striking the defendant's "general affirmative defense that plaintiff was

guilty of contributory negligence" and "precluded the defendant from introducing evidence that

the plaintiff caused the accident".

The Court disagrees with plaintiff's sweeping characterization of the Court's oral decision

in *Pesce* as "clearly establish[ing] that comparative negligence which does not directly relate to

the restraint system is inadmissible in a crashworthiness/enhanced in jury test".  The record herein

does not contain any relevant background information regarding the facts surrounding the *Pesce*

case, the experts' conclusions or the nature of the affirmative defenses asserted by the defendant.

Due to the lack of foundation, the Court is not persuaded that the oral decision is applicable or

controlling herein.

In *Mommsen v. Toyota Motor Corp.*, 2008 WL 3992775 (W.D.Wis. 2008), a case not cited

by either party herein, the Western District of Wisconsin was faced with a similar motion for

summary judgment.  The plaintiffs claimed that a defective seatbelt caused the passenger to suffer more severe injuries than he would have suffered in the accident had there been no defect.  *Id.* at *2.  The defendant claimed that the accident, and not any vehicle defect, caused the plaintiff's severe injuries and that the driver's negligence in operating the pickup caused the accident. *Id*. The plaintiff moved for an order barring the defendant from claiming that the driver was negligent in his operation of the pickup because there was no evidence that the driver was negligent.  *Id.*  The Court noted that the road conditions at the time of the accident were disputed with conflicting evidence and testimony.  *Mommsen*, 2008 WL 3992775 at *3. The Court held, "what the actual road conditions were is a disputed issue for a jury to decide" and further noted that if the defendant's witnesses were to be believed, "a jury would have sufficient evidence to decide whether the driver failed to exercise ordinary care."  The Court declined to rule, as a matter of law, that the driver was not negligent in operating the pickup truck when the accident occurred.  *Id.*

The parties concede that there is a lack of controlling authority on this particular issue. Plaintiff has not demonstrated with admissible, undisputed evidence that a defect in the seatbelt system caused the accident.  Indeed, there is an issue of fact with regard to whether plaintiff was wearing her seatbelt at the time of the accident.  Defendant has submitted reports from experts who conclude that absent the initial loss of vehicle control, no rollover or injuries would have been sustained.  Defendant's experts have also concluded that the driver side seatbelt was modified/altered from its original condition, and further, that it was not in proper working order prior to the accident.  Viewing the evidence in the light most favorable to the nonmoving party, the Court finds that there remains a genuine question of material fact as to whether modifications to the vehicle, plaintiff's driving, speed and/or the condition of the roadway was a proximate

cause of plaintiff's injuries. This could warrant a reduction in damages due to comparative fault, depending on the jury's findings at trial. Accordingly, plaintiff's motion for partial summary judgment and dismissal of unspecified affirmative defenses is denied.

## CONCLUSION

**IT IS HEREBY**

**ORDERED**, that defendant's motion for summary judgment and dismissal of plaintiff's complaint(Dkt. No. 40), is **GRANTED IN PART AND DENIED IN PART**, it is further

**ORDERED**, that defendant's motion for summary judgment and dismissal of plaintiff's breach of warranty claims is **GRANTED**; it is further

**ORDERED,** that defendant's motion for summary judgment and dismissal of plaintiff's complaint is otherwise **DENIED**; it is further

**ORDERED**, that plaintiff's motion for partial summary judgment and dismissal of defendant's affirmative defenses (Dkt. No. 39), is **DENIED**, it is further

**ORDERED** that a Settlement Conference is scheduled in this matter for Friday, July 26, 2013 at 10:00 A.M. in Albany. The parties are directed to appear at that time and make submissions in advance of the conference as directed in this Court's Order Setting Settlement Conference.

**IT IS SO ORDERED.**

Dated: June 18, 2013
      Albany, New York

Mae A. D'Agostino
U.S. District Judge